UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RODGER WILL GRANGER, SR.**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 12-2276**

**TANGIPAHOA PARISH JAIL -**                                    **SECTION: "N"(1)**
**MEDICAL STAFF, ET AL.**

### REPORT AND RECOMMENDATIONS

Plaintiff, Rodger Will Granger, Sr., a state inmate, filed this civil action pursuant to 42 U.S.C. § 1983 against the "Tangipahoa Parish Jail - Medical Staff."[1] The Court thereafter notified plaintiff that the "Medical Staff" was not a distinct, juridical entity capable of being sued and ordered him to file an amended complaint to name a proper defendant.[2] Plaintiff then filed amended complaints naming Malinda Balado and Debralee Populis as defendants.[3] Defendants have now filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[4] Plaintiff has opposed that motion.[5]

I.  Summary Judgment Standards

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary

---

[1]   Rec. Doc. 1.

[2]   Rec. Doc. 4.

[3]   Rec. Docs. 5 and 8.

[4]   Rec. Doc. 16.

[5]   Rec. Doc. 28.

judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

II.  Plaintiff's Claims

Plaintiff claims that he received inadequate medical care while he was incarcerated at the Tangipahoa Parish Jail. The clearest statement of his claims is found in the first amended complaint, in which he states:

> I Rodger Will Granger Sr. did let officers no my medical issues when entering Tangipahoa Parish Jail. That I'm suffering from a chronic liver illness. I'm suffering from Hepatitus-C and a chronic liver disease. I was told by medical staff that there is no cure for my liver, and if there was they would not pay for it because they could not afford it. I was also told with the condition of my liver i would not live long. Also I was put on a heart pill without any kind of test, to know if i was to need heart medacation. I have also put in many request that i have numness in my right arm and leg also with bad chest pains with no response. Put in many request to see a doctor but never do. All she does is write perscripshons with out seeing me. I also have a history of high blood pressure but in request never see anybody fills as if I'm gonna have a stroke. I have also put in request for and mental evaluation and never received. Again without seeing me writes more medacation. I am suffering physically emotionally and mentally. My medical records clearly states my medical conditions. I am asking to receive proper compensation, from the results of medical neglect and malpractice and puinty damages from medical staff here at Tangipahoa Parish Jail. I am also asking to receive proper medical care and treatment to ensure my general health and safety.[6]

As a preliminary matter, the Court notes that any request for injunctive relief as to these defendants is now moot. Since filing this lawsuit, plaintiff has been transferred from the Tangipahoa Parish Jail, and he is currently incarcerated at the Louisiana State Penitentiary.[7]  His transfer rendered moot any request for injunctive relief. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); see also Smith v. City of Tupelo, Mississippi, 281 Fed. App'x 279, 282 (5th Cir. 2008); Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *3 (E.D. La. Mar. 8, 2010).

---

[6]  Rec. Doc. 5.

[7]  Rec. Docs. 11 and 19.

The Court next notes that, as defendants argue, "Tangipahoa Parish Jail - Medical Staff" is an improper defendant because it is not a distinct, juridical entity capable of being sued. See Verrette v. Stalder, Civ. Action No. 07-9202, 2009 WL 411196, at *3 (E.D. La. Feb. 13, 2009); Charles v. Sheriff Orleans Parish Marlin Gusman, Civ. Action 06-0053, 2006 WL 2604613, at *6-7 (E.D. La. Sept. 6, 2006); Mondello v. Bossier Parish Sheriff's Office, Civ. Action No. 04–2609, 2006 WL 1985407, at *4 (W.D. La. June 16, 2006) (Hornsby, M.J.) (adopted by Hicks, J., on July 13, 2006).

Defendants also correctly argue that plaintiff has not stated a proper official-capacity claim against either Balado or Populis. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Balado and Populis would in reality be a claim against the local governmental body itself. Alexander v. City of Gretna, Civ. Action No. 06-5405, 2010 WL 3791714, at *3 (E.D. La. Sept. 17, 2010); Weatherspoon v. Normand, Civ. Action No. 10-060, 2010 WL 724171, at *2 (E.D. La. Feb. 22, 2010). However, the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because

harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his rights were violated as a result of a policy or custom, much less identify such a policy or custom. He therefore has failed to state a proper official-capacity claim against either Balado or Populis.

Lastly, Balado and Populis also correctly argue that the individual-capacity claims against them have no merit. Before turning to the specifics of those claims, the Court will first make a few preliminary observations concerning the law governing plaintiff's claims.

As noted, plaintiff is alleging that he was not provided with adequate medical care. However, it is important to note that an inmate's constitutional right to medical care is extremely limited. For example, if an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment is unsuccessful or because pain persists despite the treatment. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Further, the federal constitution certainly does not require that inmates receive optimal care. The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather

v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349; McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Moreover, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

On the contrary, the federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert, 463 F.3d at 345 n.12. Defendants do not argue that plaintiff's medical needs are not serious, and this Court, based on its review of the medical records, finds that plaintiff did in fact suffer from serious medical needs while incarcerated at the Tangipahoa Parish Jail.

Nevertheless, plaintiff's claims still fail because he cannot establish the deliberate indifference necessary to support his claims. The United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In support of their motion for summary judgment, defendants have provided an affidavit of defendant Populis in which she states:

1. My name is Debralee Populis. These statements are based upon my personal knowledge.

2. I am a Nurse Practitioner, and provide medical services at the Tangipahoa Parish Jail.

3. In my capacity as Nurse Practitioner, I am authorized to perform exams, order tests, prescribe medication, and diagnose and treat illnesses, among other things.

4. I provided all of these services to Granger during his detention at the Tangipahoa Parish Jail. Multiple tests were run on him, his diet was altered and his prescriptions were managed, regularly administered and adjusted as needed.

5. Additionally, I made arrangements for Granger to receive further treatment at outside facilities including the parish health unit, LSU/Lallie Kemp Hospital and Rosenblum Mental Health Clinic.

6. I also requested that Granger be transferred to Elayn Hunt Correctional Facility, as Hunt has a large medical department that is well-equipped to care for ill detainees and inmates.

7. Even after Granger was transferred to Hunt, I followed up with Hunt and other facilities to ensure that Granger would be able to keep medical appointments I previously made.

8. The medical records being produced are true and correct copies of Granger's records.[8]

The referenced medical records do in fact corroborate Populis' statement. Those records show that a health assessment was performed when plaintiff entered the Tangipahoa Parish Jail. During that assessment, it was noted that plaintiff had a history of numerous medical problems, including asthma (for which he used an inhaler), epilepsy (with his last seizure occurring within the prior couple of weeks), heart problems (stemming from fluctuating blood pressure), Hepatitis C, high blood pressure, a psychiatric disorder (depression), seizures, a recent injury to his head and shoulder, and the beginning stages of a sciorotic liver. It was further noted that he was taking Dilantin (an anti-epileptic drug used to control seizures), Metoprolol (used to treat chest pain and high blood pressure), and Lisinopril (also used to treat heart problems and high blood pressure).[9] While detained at the Tangipahoa Parish Jail, plaintiff continued to receive those medications, as well as numerous other medications including Naproxen (a nonsteroidal anti-inflammatory drug), Divalproex (used to treat seizure disorders), Loratadine (used to treat allergies), Gabapentin (used to treat seizures), Citalopram (an antidepressant), Trazodone (an antidepressant), Docusate (a stool

---

[8] Rec. Doc. 16-3.

[9] Rec. Doc. 16-2, pp. 3-4.

8

softener), Cyclobenzaprine (a muscle relaxant), Ranitidine (used to treat ulcers), and Phenytoin (used to treat seizures).[10] The records also show that plaintiff was referred the LSU Health System for Hepatitis screening and evaluation for treatment;[11] however, LSU had not yet scheduled an appointment for plaintiff at the time he was transferred from the Tangipahoa Parish Jail.[12]

As defendants correctly argue, plaintiff's allegations of deliberate indifference are clearly rebutted by those medical records. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those records show that defendants did not refuse to treat plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition. Far from ignoring plaintiff's condition or denying him care, defendants even went above and beyond what was required by arranging for plaintiff to receive evaluation and treatment from outside providers and arranged for him to be transferred to a different facility with specialized medical facilities.

The fact that plaintiff apparently believes that defendants could have done more is of no moment.[13] As previously explained, an inmate is guaranteed only adequate, *not* optimal, medical

---

[10] Rec. Doc. 16-2, pp. 7-13.

[11] Rec. Doc. 16-2, p. 58.

[12] Rec. Doc. 16-2, p. 71.

[13] Precisely what more plaintiff believes should have been done is unclear. While plaintiff expresses his displeasure with the care he received, his allegations that the treatment was inadequate are purely conclusory. For example, he does not expressly identify any medically necessary treatment or medication which he was denied.

care. See Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."). Further, absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Id. at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is simply no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*. It is evident here that there was no deliberate indifference with respect to plaintiff's Hepatitis C or his other medical conditions. Because no genuine issue of material fact remains in dispute with respect to that issue, defendants are entitled to judgment as a matter of law.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that defendants' motion for summary judgment, Rec. Doc. 16, be **GRANTED** and that all of plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[14]

New Orleans, Louisiana, this fifth day of February, 2013.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.